FREDERICK T. HEY et al., complainants,

v.

SEIFERT & BAIME, INCORPORATED, defendant.

[Decided December 21st, 1923.]

1. To enjoin the prosecution of a perfectly legal business on account of the noise made in conducting it, the evidence should be clear and convincing. Where the injury is irreparable, as the loss of health or trade, this court will intervene.

2. Where a business has been conducted at one place for a period of seven years and the evidence as to its being so conducted as to cause a nuisance is contradictory this court will not enjoin its prosecution, as such action would practically destroy a going concern.

3. Where a complainant has made no effort to abate what he considers a nuisance for a period of seven years he is estopped from coming into this court and asking for relief.

On bills, &c.

*Mr. John Trier,* for the complainants.

*Messrs. Osborne & Astley,* for the defendant.

CHURCH, V. C.

This is a final hearing in an injunction suit to restrain the operation of an hydraulic press contained in a one-story brick shop at 85 Arlington street, Newark. The building owned by the complainant is 87 Arlington street, also a brick building, about thirty-five years old. The two buildings are separated by a space of about six inches. The press in 85 Arlington street has been operated for about seven years. Defendant leased the building in the first instant for five years and renewed the lease about two years ago. The shop itself was built for the defendant, and it put in some considerable money for the installation of the press and is paying a considerable rental.

The testimony in the case is somewhat contradictory. The witnesses for the complainant, all of whom live at No. 87, testify that they have lived for varying periods of time in the house. Mr. and Mrs. Kanne have lived there thirteen years, and still live there. Mary Radin, a former tenant, lived there for nine years, although she says the noise continued through all that time. There seems to be no evidence that the noise of the press was serious enough to drive any tenant from the building or to seriously injure it. There is some testimony that pictures fell off the wall after a period of nine years, and a coffee pot fell off the stove. The ceilings fell also once or twice during the thirty-five years of the existence of the house. There is some testimony as to noise made by trucks passing through the street; but this, I think, is unimportant to the decision in this case.

One of the complainants testifies that the noise for the past two years from the press has not been as bad as it was before that time. To combat this testimony there were produced at least five witnesses, living across the street from the house, or immediately adjoining it, who said they could not hear the noise and were not disturbed by it. One of them testified that he frequently went into the building where the press was located to telephone, standing only a few feet away from the press, and was not disturbed in any way by the noise of the press. There is no evidence of damage to the health of any of the dwellers in the house. There has been some point made of the fact that the location of this property is entirely residential, but from a personal inspection of it I find that it is very near the center of the city of Newark and is largely given over to business. There is no monetary loss shown by the owner on account of the alleged vibration and noise. The evidence produced before me in this case is not so clear and convincing, to my mind, as to justify me in enjoining the conduct of a perfectly legal business. *City of Elizabeth* v. *Gilchrist & Co., 36 N. J. L. J. 111,* held in effect that when the testimony is evenly balanced the court will deny an injunction. And in *Walcott* v. *Melick, 11 N. J. Eq. 204,* the court held that only where the injury

is irreparable, as a loss of health or trade, will the court intervene.

This business has been conducted at 85 Arlington street for over seven years, and I must infer that it has established itself in that locality as a going concern, and to enjoin the operation of this press would practically destroy the business.

The brief of the complainant states that, "If used within proper bounds it would no doubt give no cause for complaint; the trouble is caused by defendant using it in an improper manner"; and then, further on, "The question of fact in the case is thus narrowed down to the extent of the noise and vibration," and, quoting again from the complainant's brief, "We repeat, that defendant, if it wished to, would have no difficulty in preventing the noise and vibration."

As I understand it, the prayer is for the complete cessation of the press, whereas the complaint seems to admit that the press can be run, under certain conditions, without annoyance to those living in No. 87.

The question of laches has also been raised, and, it seems to me, that inasmuch as the complainant has made no effort to abate what he considered a nuisance for over seven years, he is estopped from coming into this court and asking for relief. The complainant himself quotes the case of *Meredith* v. *Sayre, 32 N. J. Eq. 557,* the syllabus of which says: "Delay on the part of an adjoining owner until the work has been done in remonstrating against or trying to prevent the occupation of a street by a railroad company, with its tracks and shutes, &c., involving an immense outlay of money, will be fatal to his application for relief." And again in *Southard* v. *Morris Canal, &c., 1 N. J. Eq. 518:* "It is very unusual for a party who has stood still and seen his adversary erect a nuisance at great expense and then permitted it to continue for a number of years without complaint, to come into this court for an order to prevent its continuance."

What the courts may mean by an "immense amount of money" or by "great expense" I am not prepared to say; but it is evident that this defendant has obligated itself to an amount which to it would be a very large sum. This obliga-

tion was entered into for a period of five years and was renewed for a further period of two years, without any effort being made by the complainant to come into this court for relief. It is true that protests were made and that an application was made to the police to prevent it, which the police refused to do. And another application was made to the board of health of Newark to prevent it, which this board refused to do. This, it seems to me, indicates that the complainant should have and could have, if he so desired, come into this court on an application for an injunction at a much earlier period. He does not seem to have done so and, as he is a distinguished member of the bar, I cannot believe that he was ignorant of the fact that if a nuisance was being carried on he could have had relief in this court.

I find, therefore, as a fact, that there is not sufficient testimony before me, contradictory as it is, to warrant me in finding that a nuisance is being carried on at 85 Arlington street.

I find also, as a matter of law, that the complainant has stood by too long and allowed the defendant to continue to develop his business through too long a period to warrant his coming now into equity to seek relief.

I will, therefore, advise a decree dismissing the bill for an injunction.